**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
RAFAEL ALBERTO MARTINEZ, *individually*
*and on behalf of all others similarly situated*,

                                    *Plaintiff*,

                                                            **REPORT AND**
                                                            **RECOMMENDATION**
                    -against-                                2:24-cv-01792 (GRB) (JMW)


  GUL K. IQBAL, *et al.,*
                                    *Defendants*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**A P P E A R A N C E S:**

    John J.P. Howley
    **The Howley Law Firm P.C.**
    1345 Avenue of the Americas
    New York, New York, 10105
    (212) 601-2728
    *Attorney for Plaintiff*

    *No Appearance for Defendants*

**WICKS,** Magistrate Judge:

Plaintiff Rafael Alberto Martinez ("Plaintiff") commenced the underlying action against

Gul K. Iqbal, Raja Iqbal ("Individual Defendants"), and the six businesses that they own and

operate ("Corporate Defendants")[1], for alleged violations of the Fair Labor Standards Act

("FLSA"), New York Labor Law ("NYLL"), and for conversion and imposition of a constructive

trust. (*See generally* ECF No. 1.)  Here, Plaintiff failed to timely serve the Individual Defendants

with a summons and complaint within the 90-day period mandated by the Federal Rules of Civil

---

[1] The Clerk of Court has entered a Certificate of Default against each of the Corporate Defendants (ECF No. 34) but has denied entering a Certificate of Default against the Individual Defendants on grounds of untimely service. (*See* Electronic Order dated October 30, 2024.)

Procedure. *See* Fed. R. Civ. P. 4(m). Specifically, Plaintiff filed the Complaint on March 11, 2024, effectively mandating that service be made upon Defendants on or before June 9, 2024. However, service was not effectuated within this timeframe. Rather, Plaintiff served Individual Defendant Raja Iqbal[2] with a summons and complaint on June 24, 2024, and Defendant Gul Iqbal[3] on July 9, 2024 (ECF Nos. 25, 32), late by 15 days and 30 days, respectively.

Before the Court on referral from the Honorable Gary R. Brown is Plaintiff's renewed motion for an extension of time to serve the Individual Defendants pursuant to Federal Rule of Civil Procedure 4(m). (ECF No. 37.) For the following reasons, the undersigned respectfully recommends that Plaintiff's renewed motion for an extension of time to serve the Individual Defendants (ECF No. 37) be **DENIED**.

## **BACKGROUND**

Plaintiff commenced the underlying action on March 11, 2024, seeking damages for Defendants' alleged violations of the FLSA and NYLL during Plaintiff's time of employment with Defendants, from November 17, 2022 to January 16, 2024, at various Rollies retail stores located across Long Island. (ECF No. 1 at ¶¶ 1, 18-20.) Namely, as Plaintiff avers, the Individual Defendants and the companies they owned and operated failed to pay Plaintiff and other employees their required overtime wage rates, failed to pay them on their scheduled pay dates, neglected to pay them their "spread of hours" pay after working more than ten hours in a day,

---

[2] Raja Iqbal was served on June 24, 2024 at 2536 Middle Country Road, Centereach, NY 11720 by substituted service delivery, specifically through Mohammed Ibrahin, a person of suitable age and discretion at the actual place of business, dwelling house, or usual place of abode, accepting process for Raja Iqbal. (ECF No. 25.)

[3] Gul Iqbal was served on July 9, 2024 at 384 Oakland Ave, Central Islip NY 11722 by substituted service delivery, specifically through Mustafa Vijal, a person of suitable age and discretion at the actual place of business, dwelling house, or usual place of abode, accepting process for Gul Iqbal. (ECF No. 32.)

and failed to provide them with their wage notices and statements as required by federal and state law. (*Id.* at ¶¶ 2-3, 21-29.)

On May 23, 2024, the Court issued summonses to Individual Defendant Gul K. Iqbal, and all Corporate Defendants. (ECF No. 22.) A summons was issued to Individual Defendant Raja Iqbal on May 31, 2024. (ECF No. 24.) Subsequently, Raja Iqbal was served on June 24, 2024, and his answer was due July 15, 2024 (ECF No. 25), whereas Gul K. Iqbal was served on July 9, 2024, and his answer was due July 30, 2024. (ECF No. 32.) On October 3, 2024, the undersigned raised that no response to the Complaint was filed by any Defendant. Accordingly, Plaintiff's Counsel was directed to "either request a certificate of default for the non-appearing defendants and then move for default judgment, or voluntarily dismiss this case." (Electronic Order dated October 3, 2024.) On October 16, 2024, Plaintiff's Counsel filed a request for a certificate of default against all Defendants. (ECF No. 33.) Shortly thereafter, on October 30, 2024, the Clerk of Court granted Plaintiff's Certificate of Default as against the Corporate Defendants (ECF No. 34) but denied the Certificate of Default as to the Individual Defendants. (Electronic Order dated October 30, 2024.) Specifically, the Clerk of Court noted:

> Under Federal Rule of Civil Procedure 4(m), the defendants must be served within ninety (90) days of the filing of the complaint. The complaint in this matter was filed on March 11, 2024, and therefore the defendants had to be served by June 11, 2024. According to the summonses returned executed in this matter, the defendant Raja Iqbal [ECF No. 25] was served on June 24, 2024, and the defendant Gul K. Iqbal [ECF No. 32] was served on July 9, 2024.

(*Id.*)

Plaintiff subsequently filed a motion for an extension of time to serve the Individual Defendants pursuant to Fed. R. Civ. P. 4(m). (ECF No. 35.) The undersigned, on November 20, 2024, denied Plaintiff's motion without prejudice and with leave to renew, specifically directing that any re-filed motion be made by December 4, 2024, and contain "more supporting evidence

as set forth above and consistent with the standards outlined in this Order." (ECF No. 36.) In addition, the undersigned forewarned that "[i]f, by that date, Plaintiff either does not refile the motion, or if the refiled motion remains factually deficient, the undersigned will recommend to an assigned District Judge that Plaintiff's claims asserted as against the Individual Defendants be dismissed." (*Id.*)

Plaintiff, on December 4, 2024, filed his renewed motion for extension of time to serve the Individual Defendants. (*See* ECF No. 37.) The undersigned, however, noted that:

> In its renewed motion, Plaintiff's Counsel maintains that it attempted to serve the Individual Defendants at an address listed on a "reliable database" one which Plaintiff's Counsel has used to locate "addresses of hundreds of defendants since 2012." (ECF No. 37 at pp. 2-3.) Upon learning that the Individual Defendants did not reside at this listed address, Plaintiff's Counsel promptly directed the process server to attempt service at the business locations. (*Id.*) Further, Plaintiff's Counsel submits two affidavits of "non-service" attempting to illustrate that the Individual Defendants were not served because of the incorrect address. Such supplemental proof indicates that the initial attempt to serve was made on June 14, 2024, five days following the 90-day deadline prescribed by FRCP 4. (*See* ECF No. 37-2 at pp. 2-3.) Crucially, neither affidavit demonstrates that Gul K. Iqbal was served or that any attempt was made to serve him. Specifically, both affidavits list the "party to be served upon" as Raja Iqbal, the "recipient name/address" as Rajas address, and a note saying "current resident claims the subject no longer lives here." (*Id.*)

(Electronic Order dated December 11, 2024.)

Accordingly, the undersigned directed the Clerk of Court to assign a District Judge to the case and, shortly after being assigned, Judge Brown referred Plaintiff's renewed motion (ECF No. 37) to the undersigned to issue a Report and Recommendation or a Sua Sponte Report and Recommendation to dismiss the claims asserted against the Individual Defendants. (Electronic Order dated January 7, 2025.) No opposition to the motion has been filed.

## **DISCUSSION**

Proper service upon an individual in a civil suit is determined by the Federal Rules of Civil Procedure.[4] *Kurzberg v. Ashcroft*, 619 F.3d 176, 183 (2d Cir. 2010).  Such service may be effectuated by "delivering a copy of the summons and of the complaint on the individual personally, leaving a copy of each at the individual's dwelling or usual place of abode . . . ; or delivering a copy of each to an agent authorized . . . to receive service of process." Fed. R. Civ. P. 4(e).  If a plaintiff fails to serve a defendant within 90 days from when the complaint was filed, "the court—on motion or on its own after notice to the plaintiff—*must* dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added).  However, upon a plaintiff's showing of "good cause" for the failure to timely serve, "the court *must* extend the time for service for an appropriate period." *Id.* (emphasis added).

### I.    *Plaintiff Fails to Satisfy Rule 4(m)'s Good Cause Standard to Excuse Untimely Service*

"A party seeking an extension for good cause 'bears a heavy burden of proof.'" *Tolchin v. Cnty. of Nassau*, 322 F. Supp. 3d 307, 311 (E.D.N.Y. 2018) (citation omitted).  In considering whether good cause exists, courts within this Circuit "weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010).  Good cause is rare and is typically only found in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Vaher v. Town of Orangetown, N.Y.*,

---

[4] Rule 4(e)(1) states that an individual may also be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Here, under New York's Civil Practice Law and Rules ("CPLR") § 308, personal service upon a natural person is virtually identical to the Federal Rules. *See Windward Bora LLC v. Baez*, No. 19-CV-1755, 2021 WL 7908011 (RJD), at *5 (E.D.N.Y. Feb. 24, 2021).

916 F. Supp. 2d 404, 419 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Coleman v. Cranberry Baye Rental Agency*, 202 F.R.D. 106, 109 (N.D.N.Y. 2001) (good cause found where plaintiff made diligent efforts but could not locate party to be served); *Barban v. Rheem Textile Sys., Inc.*, No. 01 Civ. 8475 (ILG), 2002 WL 31947209, at *1 (E.D.N.Y. Dec. 17, 2002) (same). "'Factors deemed outside of the plaintiff's control typically include sudden illness, natural catastrophe or evasion of service of process.'" *Fantozzi v. City of New York.*, 343 F.R.D. 19, 26 (S.D.N.Y. 2022) (citation omitted).

Here, Plaintiff alleges that his failure to complete timely service was "due to circumstances beyond [his] control . . . .". (ECF No. 37 at p. 3.) Namely, he contends that the Individual Defendants failed to waive service despite receiving requests to do so. (*Id.*) Upon this failure, Plaintiff hired a process server, who was informed that "the Individual Defendants no longer lived at the addressed listed in a reliable database." (*Id.*) Specifically, Plaintiff asserts that on June 14, 2024, he was notified that the process server was "unable to complete service on the Individual Defendants at the residential address" Plaintiff identified using "the Intelius.com database". (*Id.* at pp. 1-2.) Plaintiff supposedly utilized this website "to locate addresses of hundreds of defendants since 2012" and it "has always been reliable." (*Id.* at p. 2.) Subsequently, Plaintiff "promptly directed" the process server to complete service at the Individual Defendants' businesses. (*Id.* at p. 3.)

With respect to a finding of good cause for delay in service, Plaintiff fails to provide sufficient evidence to warrant such a determination. A showing of good cause is largely dependent upon whether a plaintiff exhibited due diligence when attempting to effectuate service. *See DeLuca*, 695 F. Supp. 2d at 66. Though no "exact list" of service requirements constituting due diligence has emerged, case law in the Second Circuit has shaped "due

6

diligence" into a "rough standard," ordinarily requiring multiple service attempts upon a defendant in addition to inquiring into the defendant's residence or place of employment before effectuating service. *See Weifang Xinli Plastic Prods. v. JBM Trading Inc.*, No. 1:11-cv-02710 (WFK) (LB), 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014) (collecting cases); *see also United States v. Veeraswamy*, No. 23-CV-9379 (RPK) (JAM), 2025 WL 444692, at *12 (E.D.N.Y. Feb. 10, 2025) (noting due diligence may be met "when the plaintiff attempts service at least three times, 'optimally on non-consecutive days'" or when process servers "inquire with neighbors, check telephone listings, and conduct public record searches to identify the defendant's location . . [.]")

Here, Plaintiff's reliance on a single database search from one website to confirm the address of the Individual Defendants is simply not enough. *See UMG Recordings, Inc. v. Frawley*, No. 1:08-CV-0765, (GTS/RFT), 2011 WL 13234394, at *8 (N.D.N.Y. July 21, 2011) (determining plaintiffs did not exercise "due diligence" in their efforts to serve defendant where they merely performed "an online search of defendant's address of record on a public records database" and, upon failure to serve at this address, plaintiffs made no further attempt to discover defendant's whereabouts but rather ran a second online search). Indeed, though reliance on a database is not *per se* insufficient, courts will require more action than what Plaintiff took here to satisfy a showing of "due diligence". *See Veeraswamy*, 2025 WL 444692, at *13 (finding that due diligence may be satisfied when a party "attempted to ascertain Defendants' location through *multiple* public records searches" and confirmed such address by cross-referencing "Tax Court filings, Accurint, Lexis public records searches," and even verifying the address with the NY DMV) (emphasis added). Plaintiff's bare assertion that the database he relied on had been reliable in the past—and therefore, must have been reliable here —is nothing more than a

contention unsupported by any submitted indicia of prior successful service after using the site, or any proof (i.e., search history) of previously generated searches for the Individual Defendants' residences. Additionally, Plaintiff does not demonstrate any effort made to cross-check other sources or verify that the information found on Intelius.com was accurate.

Moreover, the minimal proof Plaintiff does submit—two affidavits of non-service[5]—illustrate that service was *attempted* only upon Individual Defendant Raja Iqbal on June 14, 2024. (ECF No. 37-2.) Plaintiff submits no affidavit relating to attempted service upon Gul Iqbal whatsoever. (*See* Electronic Order dated December 11, 2024.) At most, Plaintiff has submitted documented proof that he made *one* attempt to serve *one* Individual Defendant *after the allotted time for service had expired*. A single failed attempt to serve one Individual Defendant after the 90-day deadline expired can hardly constitute good cause to extend the time to serve. Accordingly, the undersigned recommends a finding that Plaintiff has not satisfied the good cause standard under the Federal Rules to warrant extending the time to serve.

Indeed, the few cases Plaintiff relies on do not compel a contrary recommendation. *First,* in *Barban v. Rheem Textile Sys.*, Inc., No. 01 CIV. 8475(ILG), 2002 WL 31947209, at *1 (E.D.N.Y. Dec. 17, 2002), the court found that good cause was shown given defendants' diligent efforts to serve a party living in Korea—a country that "is not a signatory to the Hauge Convention on Service Abroad." Here, the Individual Defendants live in New York, not over 6,000 miles from New York. (ECF No. 1 at p. 3.) Alas, the comparison is inapposite. The difficulty in attempting service of a party in a different country is a far cry from attempt service of two local residents of New York.

---

[5] The affidavits of non-service are identical copies of one another. (*See* ECF No. 37-2.)

*Second*, in *Coleman v. Cranberry Baye Rental Agency*, 202 F.R.D. 106, 109 (N.D.N.Y. 2001), the court concluded good cause existed considering plaintiff provided an affidavit describing "three attempts to obtain information from  [a defendant's] son, at least two contacts with an HUD investigator, contact with a private investigator who undertook a nationwide database search to locate her, and unsuccessful efforts to serve her at [four] different addresses in Florida." Here, unlike the multiple creative service attempts in *Coleman*, Plaintiff made only *one* attempt to serve the Individual Defendants at their residences.  Plaintiff's second attempt to serve them at their businesses does not alter the analysis, given Plaintiff's own acknowledgement that "[the Individual Defendants] were rarely at those locations, so an employee would have to accept service." (ECF No. 37 at p. 3.)

Furthermore, Plaintiff alleges that "one might argue in hindsight that Plaintiff could have completed timely service during the 60 days that Defendants had to respond to the waiver request, but that would have defeated the purpose of Rule 4(d), which is to avoid the expense of process service." (ECF No. 37 at p. 3.)  Additionally, Plaintiff contends that he "could have served the Individual Defendants at one of their businesses addresses in the first instance" and, upon considering this avenue, chose not to because he "knew from [his] client that the Individual Defendants were rarely at those locations, so an employee would have had to accept service." (*Id.*)

Here, however, the waivers of service were supposedly delivered to the Individual Defendants on March 25, 2024. (ECF No. 37-1.)  Fed. R. Civ. P 4(d) allows for 60 days for Defendant to waive service which, here, would be May 25, 2024.[6] *See Kogan v. Facebook, Inc.*,

---

[6] Rule 4(d)(3) specifically provides that: "[a] defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent—or until 90 days after it was sent to the defendant outside any judicial district of the United States."

334 F.R.D. 393, 398–99 (S.D.N.Y. 2020). Plaintiff submits no evidence demonstrating he attempted to, nor made any effort to, serve the Individual Defendants from May 25, 2024 to June 9, 2024. Indeed, these counterfactuals Plaintiff raises further demonstrate that he *could have* chosen to serve the Individual Defendants during the 60-day period they had to respond to the waiver request, and he *could have* served the Individual Defendants at one of their businesses in the first instance. (*See* ECF No. 37 at p. 3.) Plaintiff chose not to do so. These inadequate excuses weigh against a finding of good cause, as Plaintiff himself has admitted that these strategic decisions were *solely within his control*. *See Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013) (reiterating the well-established principle that good cause is generally found only in "exceptional circumstances" where the failure to effectuate timely service "was the result of circumstances beyond plaintiff's control").

For the foregoing reasons, the undersigned respectfully recommends that the motion to extend the time for service be denied, since good cause has not been shown to warrant extending the time to serve the Individual Defendants.

## II.    *Plaintiff Should Not Be Granted a Discretionary Extension of Time*

A district court "may exercise [its] discretion to grant extensions under 4(m) absent a showing of good cause under certain circumstances . . . .". *Zapata v. City of New York*, 502 F.3d 192, 193 (2d Cir. 2007). "Factors to be considered are: (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Ferreira v. Carranza*, No. 20-CV-2305 (PKC) (LB), 2022 WL 34610, at *2 (E.D.N.Y. Jan. 4, 2022) (citation omitted.); *Harmon v. Bogart*, No. 17-CV-1070S,

2019 WL 483836, at *3 (W.D.N.Y. Feb. 7, 2019), *aff'd*, 788 F. App'x 808 (2d Cir. 2019) (internal citations omitted) ("[C]ourts must keep in mind that "in the absence of good cause, no weighing of the prejudices between the two parties can ignore that the situation is the result of Plaintiff's neglect . . . Thus, the Second Circuit "leave[s] to the district courts to decide on the facts of each case how to weigh the prejudice to the defendant that arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service.")  The Court analyzes these factors in turn.

*First,* although the statute of limitations would not bar a re-filing of the entire action against the Individual Defendants, any non-willful FLSA claims asserted in the Complaint may be barred by the two-year statute of limitations set forth in 29 U.S.C. §255(a).[7] FLSA claims have a two- or three-year statute of limitations, depending on whether a defendant's conduct was willful. *See* 29 U.S.C. § 255(a).  Plaintiff maintains that "while the statute of limitations would not bar a re-filing of the entire action," any non-willful FLSA claims "dating back more than two years to November 17, 2022"[8] would be barred under the two-year statute of limitations set forth in  29 U.S.C. §244(a) "unless he can prove intentional violations." (ECF No. 37 at p. 5.)

Here, the Complaint includes assertions of both willful (ECF No. 1 at ¶¶ 18, 37-39) and what appears to be a non-willful violation of the FLSA. (ECF No. 1 at ¶ 54.) This factor, therefore, weighs slightly in favor of granting a discretionary extension of time to serve, as not all claims would survive refiling *should* Plaintiff fail to prove intentional violations. *See*

_____

[7] With respect to the other claims, NYLL claims have a six-year statute of limitations (*see* N.Y. Lab. L. § 198), conversion claims have a three-year statute of limitations following the alleged theft (*see* N.Y. C.P.L.R. § 214(3)), and imposed constructive trust claims have a six-year statute of limitations following the occurrence of the wrongful act creating a duty to restitute (*see* N.Y. C.P.L.R. § 213(1)).  Thus, the other claims would not be time barred.

[8] Plaintiff asserts he was hired on or about November 17, 2022. (ECF No. 1 at ¶ 18.)

11

*Harrison v. New York*, 95 F. Supp. 3d 293, 319 (E.D.N.Y. 2015); *but see Welch v. Hertz Car Rental Agency*, No. 1:18-CV-00717 (EAW), 2019 WL 1243681, at *5 (W.D.N.Y. Mar. 18, 2019) (noting this factor weighs in favor of denying an extension of time where "plaintiff would be free to reassert" claims).

Crucially, however, while the first factor may weigh slightly in favor of Plaintiff as to only one of his asserted claims, this factor is non-dispositive. *See Jimemez v. U.S. Bank Nat'l Ass'n*, No. 2:17-cv-00033 (ADS) (AYS), 2018 WL 4954097, at *4 (E.D.N.Y. Oct. 11, 2018) (exercising discretion to not extend time to serve after noting that "[w]hile the fact that the limitations period has run generally favors plaintiffs, it does not guarantee an extension for every case that may be time-barred if refiled"). Similarly, even if this factor favors Plaintiff, "'courts have declined to extend the time to serve' where—as here—'a plaintiff has failed to demonstrate diligence, establish good cause, and/or provide any excuse.'" *Harmon*, 2019 WL 483836, at *4; *see Jones v. Westchester Cty.*, No. 14-CV-9803 (KMK), 2018 WL 6726554, at *7 (S.D.N.Y. Dec. 21, 2018); *see also Guerrero v. City of New York*, No. 14-CV-8035 (VSB), 2018 WL 4333985, at *6 (S.D.N.Y. Sept. 11, 2018). Accordingly, though this factor weighs slightly in favor of granting an extension, this factor alone is not dispositive.

*Second,* the Individual Defendants did not have actual notice of this lawsuit. Plaintiff contends that because he mailed "multiple copies of the Complaint with the waiver requests to each of them and to each of the corporations they own and control," or because the corporations were eventually properly served, the Individual Defendants had actual notice of the lawsuit. (ECF No. 37 at p. 5.) Ordinarily, "such notice would not 'cure [Plaintiff's] failure to comply with the statutory requirements for serving process.'" *Retrospective Goods, LLC v. T&M Invs. Int'l, LLC*, No. 20-CV-6201 (AMD) (RER), 2022 WL 2161935, at *5 (E.D.N.Y. May 20, 2022)

(alteration in original) (quoting *Sartor v. Toussaint*, 70 Fed. App'x 11, 13 (2d Cir. 2002)); *see Regan v. Village of Pelham*, No. 19 Civ. 7987 (NSR), 2021 WL 1063320, at *5-6 (S.D.N.Y. Mar. 19, 2021) (dismissing claims for improper service of process after noting "it is unlikely that a notice of a lawsuit can be construed as service" under Rule 4).

Similarly, although meeting the threshold for actual notice is not a particularly demanding standard, Plaintiff has not cited any case law to substantiate his assertion that these efforts are sufficient. *See Etheredge-Brown v. Am. Media, Inc.*, No. 13-CV-1982 JPO, 2015 WL 4877298, at *4 (S.D.N.Y. Aug. 14, 2015 (finding "some evidence" of actual notice through defendant's communication with his employer and his family living at the address that received service.) Plaintiff's claim that the Individual Defendants had notice of this action based on the documents being mailed "to them" entirely presupposes that Plaintiff correctly identified their residential address. As detailed above, Plaintiff admitted that the Intelius.com database contained an incorrect address for these Defendants. (*See* ECF No. 37 at pp. 1-2.) Additionally, Plaintiff's Exhibit B suggests that Plaintiff possessed the wrong residential address, as the process server noted: "Manner of Service: Bad Address" and "Current resident claims the subject no longer lives there." (ECF No. 37-2 at pp. 2-3.)

Furthermore, Plaintiff's contention that because he eventually properly served the corporation, the Individual Defendants had actual notice, is contradicted by his own assertion that he avoided serving the corporations in the first instance because "he knew from [his] client that the Individual Defendants were *rarely at those locations*, *so an employee would have had to accept service*." (ECF No. 37 at p. 3.) Thus, there is a lack of sufficient evidence in the record to confirm that the Individual Defendants have actual notice of the suit even if their corporate form has been properly served. Indeed, Plaintiff cites no authority demonstrating that serving an

unknown employee of the Individual Defendants' businesses satisfies Rule 4's service requirements. If anything, Rule 4(e)(C) provides that an individual may be served by delivering a copy of the summons and of the complaint "to an agent authorized by appointment or by law to receive service of process." Further, Plaintiff fails to submit proof, or even assert, that the recipient of process for the corporation was a proper agent or whether that individual ever informed the Individual Defendants about the lawsuit.[9] *See Avanti Enterprises, Inc. v. A&T Produce, Inc.*, No. CV-09-1185 (NGG), 2010 WL 3924771, at *2 (E.D.N.Y. July 21, 2010) (noting a defendant did not receive actual notice where he failed to answer the complaint, and where plaintiff offered no evidence that defendant was aware of the lawsuit and "provide[d] no basis upon which to conclude that the [] defendant had notice of this lawsuit"). Accordingly, this factor weighs against granting a discretionary extension of time to serve.

*Third,* the Individual Defendants have not attempted to conceal alleged defects in service. Plaintiff avers that "there is evidence suggesting that [the Individual Defendants] attempted to evade service by claiming that they do not live at locations where a reliable database indicates they live" and where mail was delivered but returned. (ECF No. 37 at p. 5.) A conclusory allegation that there is "evidence suggesting they attempted to evade service," based on nothing more than Plaintiff's untested assumption that his database of choice is always correct, does not sway the undersigned. *See S. Bay Sailing Ctr., Inc. v. Standard Fire Ins. Co.*, No. 15-CV-6183 (JMA) (SIL), 2017 WL 913625, at *11 (E.D.N.Y. Jan. 17, 2017) (concluding "there [was] no evidence that Defendant himself attempted to conceal a defect in service, and thus this factor disfavors [plaintiff]"). Moreover, Plaintiff's argument is even more unconvincing given that the

---

[9] Importantly, none of the Corporate Defendants have appeared in this case, and their default has been noted on the docket, thereby reinforcing the likelihood that the Individual Defendants were not aware of this lawsuit through notice from their corporate form. (*See* ECF No. 34.)

14

Individual Defendants have not appeared or participated in the case. *See Retrospective Goods, LLC*, 2022 WL 2161935, at *5 (concluding that none of the four factors weighed in favor of granting a discretionary extension of time, particularly recognizing that "it is clear that Defendants did not attempt to conceal defects in service here, where they have not participated in the case or appeared before the Court").

Additionally, Plaintiff's allegations of concealment run contrary to his submissions. For example, on June 14, 2024, Plaintiff maintains he was informed that the process server was unable to complete service on the Individual Defendants at the addresses listed on Intelius.com. (ECF No. 37 at pp. 1-2.) In addition, Plaintiff's Exhibit B illustrates that service failed because of an incorrect address. (*See* ECF No. 37-2 at pp. 2-3 (demonstrating the process server wrote, "Manner of Service: Bad Address" and "Current resident claims the subject no longer lives there.")). The service, thus, failed because Plaintiff relied on the wrong address, not because of any evasion by the Individual Defendants. Accordingly, this factor weighs against granting a discretionary extension of time to serve.

*Finally*, the Individual Defendants would likely suffer slight prejudice if the Court were to extend the time to serve. Plaintiff alleges that the Individual Defendants have not suffered any prejudice and will not suffer any prejudice if an extension is granted. (ECF No. 37 at p. 5.) Moreover, Plaintiff asserts that allowing a dismissal without prejudice followed by an immediate re-filing would prejudice both parties and the Court, as it would result in two separate actions based on the same facts and claims. (*Id.*)

Here, and as detailed *supra*, the Individual Defendants would suffer prejudice should Plaintiff be permitted an extension of time to serve, and therefore pursue the non-willful claims that would be time barred under applicable the statute of limitations. *See Ferreira*, 2022 WL

34610, at *2 ("[E]xtending the service period beyond the statute of limitations period for the action imposes a corresponding prejudice on defendants.") (citation omitted); *see also Marosan v. Trocaire College*, No. 12-CV-151, 2013 WL 505423, at *4 (W.D.N.Y. Feb. 8, 2013) (declining to exercise discretion to extend time to serve after considering, *inter alia*, "that the Defendant would also suffer prejudice by extending the time for service beyond the limitations period for the action"). Conversely, as for the intentional violations asserted, the Individual Defendants would not be prejudiced by an extension of time considering these claims are still within the applicable limitations window. *See Retrospective Goods, LLC*, 2022 WL 2161935, at *5 ("[T]here is no clear prejudice to Defendant in extending the service period where Plaintiff would be able to refile its claims upon dismissal."). Accordingly, the undersigned recommends a finding that the Individual Defendants would suffer minimal prejudice if an extension of time was granted.

Though courts have discretion to extend time even where good cause has not been satisfied, this Court will not exercise that discretion here as Plaintiff offers no "colorable excuse" for its failure to timely serve the Individual Defendants. Such a fundamental showing is routinely required by courts within this Circuit to warrant a discretionary extension of time. *See Zapata*, 502 F.3d at 197–98 (holding that the plaintiff must "ordinarily advance some colorable excuse for neglect" for a discretionary extension of time to be granted); *see also Deptula v. Rosen*, 558 F. Supp. 3d 73, 89 (S.D.N.Y. 2021) (finding that although the court's authority to grant an extension of time for service of process absent good cause "is purely discretionary," there was "no reason for the Court to exercise that discretion . . . as plaintiff failed to articulate any 'colorable excuse' for that failure") (citations omitted).

For example, in *Brown v. Dalton*, the court first determined that good cause was not demonstrated as plaintiff failed to provide any documented attempts to effectuate proper service. No. 1:18-CV-00799 (EAW), 2019 WL 2192779, at *2 (W.D.N.Y. May 21, 2019). Next, in weighing the four discretionary factors, the court found that "at least two of the four factors weigh[ed] against granting a discretionary extension of time to serve the Summons and Complaint". *Id.* at *3. Indeed, the court continued by noting that even if the factors shifted in favor of granting an extension of time to serve, a district court would likely still deny such a motion as plaintiff "faile[ed] to advance some colorable excuse for neglect". *Id.* at *4 (internal quotations omitted). Such a requisite showing was not made as plaintiff offered no evidence to dispel the idea that the failure to timely serve was not a result of his own ignorance or neglect. *Id.*

Indeed, this principle applies in situations, like here, where only two discretionary factors favor Plaintiff. *See Fantozzi*, 343 F.R.D. at 31 ("[T]he first two factors favor Plaintiff, while the second two favor Defendants. But however those factors might balance out in the abstract, here, they must be viewed in the context of [the serving party's] abject failure to justify adequately his untimely service on [defendants]"); *see also Vaher*, 916 F. Supp. 2d at 421 (determining, where "two factors favor Plaintiff and two factors favor Defendants, . . . the Second Circuit has stated clearly that . . . a district court may still decline to excuse a failure to timely serve the summons and complaint where the plaintiff fails to advance some colorable excuse for neglect"); *see also Welch*, 2019 WL 1243681, at *6 ("Accordingly, even if the factors were in equipoise or slightly favored Plaintiff, the Court would not find an extension was warranted, because Plaintiff has failed to advance even a colorable excuse for his total disregard of his service obligation.")

Here, two out of the four factors weigh against extending the time to serve and Plaintiff has not provided a "colorable excuse"—beyond its unchecked reliance on a single database—for his failure to timely serve the Individual Defendants. Like in *Brown*, Plaintiff has presented nothing to the Court to dispel the idea that the failure to timely serve was not a result of his own "ignorance or neglect". This is especially true given that Plaintiff followed all proper procedures in serving the Corporate Defendants but fell short with the Individual Defendants. (*See* ECF No. 35 at p. 2.)  As such, the undersigned believes there is no reason to extend the service deadline under the Court's discretionary power.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's Renewed Motion to Extend Time to Serve the Individual Defendants (ECF No. 37) be **DENIED**.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel through ECF. Counsel for Plaintiff is directed to serve copies of this Report and Recommendation upon the Individual Defendants on or before **April 4, 2025**, and file proof of service of same on ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action before the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v.*

*Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
          March 26, 2025

                  **RESPECTFULLY RECOMMENDED**,

/S/ *James M. Wicks*
                  JAMES M. WICKS
          United States Magistrate Judge